UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MILWAUKEE INNER CITY CONGREGATIONS
ALLIED FOR HOPE, et al,

          Plaintiffs,

          Case No. 24-cv-1043-bhl

v.

US DEPARTMENT OF TRANSPORTATION, et al,

          Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART MOTION TO CORRECT ADMINISTRATIVE RECORD

On August 18, 2024, Plaintiffs Milwaukee Inner City Congregations Allied for Hope, 1000 Friends of Wisconsin, Inc., Sierra Club Wisconsin Chapter, and Milwaukee Riverkeeper filed this lawsuit against Defendants, the United States Department of Transportation (DOT), the Federal Highway Administration (FHWA), the Secretary of the Wisconsin Department of Transportation (WDOT), and various individual agency administrators, challenging Defendants' plans to expand Interstate Highway 94 (I-94) in the City of Milwaukee. (ECF No. 1.) Plaintiffs claim that Defendants adopted the expansion plans in violation of the National Environmental Policy Act (NEPA) by failing to adequately analyze alternatives to the final plan, by failing to adequately analyze the plan's impact on Black and Hispanic residents, and by failing to mitigate the expansion's negative impact on the "human and natural environment." (*Id.*)

Because NEPA is a procedural statute, Plaintiffs' challenges are resolved under the Administrative Procedures Act (APA). Accordingly, with input from the parties, the Court set a schedule (since amended twice) for the production of the administrative record and for the filing of any motions challenging the record. (ECF Nos. 23, 27, & 33.) Defendants completed their production of the final administrative record, which they report includes nearly 60,000 pages of documents, on April 11, 2025. (ECF No. 34.) Plaintiffs challenge Defendants' production as incomplete. (ECF Nos. 38 & 39.) They ask the Court to order Defendants to include two additional sets of documents: (1) materials Plaintiffs submitted for consideration before

Defendants issued their final Record of Decision and Final Supplemental Environmental Impact Statement; and (2) unidentified materials that Defendants elected not to include in the record.[1] (ECF No. 39 at 1–2.) As to the second category, Plaintiffs ask the Court to Order Defendants to provide a log that identifies any materials excluded from the record along with an explanation for their exclusion. Defendants insist the administrative record is complete without any supplementation and object to the production of an exclusion log. On January 21, 2026, the Court held a Motion Hearing and heard oral argument on the matter. (ECF Nos. 52 & 53.)

For the reasons explained below, the motion is granted in part and denied in part. The parties are directed to meet and confer and file a joint report recommending a proposed schedule for completing the supplementation required by this Order and for the submission of merits briefs. The parties must file their joint report within 14 days of this Order.

## BACKGROUND

Plaintiffs challenge the Record of Decision and Final Supplemental Environmental Impact Statement relating to Defendants' Economic Impact Statement and Record of Decision the expansion of I-94 from 16th to 70th Streets in Milwaukee, Wisconsin. This project has a two-part history.

Initially, the Federal Highway Administration published a "Notice of Intent To Prepare an Environmental Impact Statement: Milwaukee County" for the expansion project on May 18, 2012. 77 Fed. Reg. 29750 (May 18, 2012). That Notice of Intent was amended to reflect an expansion of the project on August 28, 2013. *See* Revised Notice of Intent to Prepare an Env't Impact Statement: Milwaukee Cnty., Wis., 78 Fed. Reg. 53186 (Aug. 28, 2013). During this initial phase, the Environmental Protection Agency (EPA) published a draft Environmental Impact Statement on November 4, 2014. EPA, CEQ No. 20140326, Draft Env't Impact Statement, Nov. 4, 2014 (available at https://cdxapps.epa.gov/cdx-enepa-II/public/action/eis/search); *see also* Env't Impact Statements; Notice of Availability, 79 Fed. Reg. 68242 (Nov. 14, 2014) (notifying the public of when comments on the draft were due). The comment period for that draft ended on January 13, 2015, 79 Fed. Reg. at 68242, and a Final Environmental Impact Statement was issued on January 29, 2016 (the 2016 EIS), EPA, CEQ No. 20160028, Final Env't Impact Statement, Jan. 29, 2016

---

[1] In their motion and opening brief, Plaintiffs seek a third category of materials, communications regarding transit mitigation issues. (ECF No. 39 at 1.) At a hearing on January 21, 2026, the parties confirmed this issue was resolved consensually. (ECF Nos. 52 & 53.)

(available at https://cdxapps.epa.gov/cdx-enepa-II/public/action/eis/search). The FHWA then published a Record of Decision for the project on October 7, 2016. Notice of Final Fed. Agency Actions on Proposed Highway Project in Wis., 81 Fed. Reg. 69898 (Oct. 7, 2016).

The initial 2016 Record of Decision was rescinded because the WDOT was unable to fund it. Notice of Rescission of the Record of Decision (ROD) for the I-94 East-West Corridor Project in Milwaukee, Milwaukee Cnty., Wis., 82 Fed. Reg. 47290, 47290–91 (Oct. 11, 2017). The project did not die with this rescission, however. On June 15, 2021, the FHWA published a new Notice of Intent for a *supplemental* draft Environmental Impact Statement. *See* Notice of Intent to Prepare a Supplemental Env't Impact Statement: Milwaukee Cnty., 86 Fed. Reg. 31782 (June 15, 2021); Env't Impact Statements; Notice of Availability, Amended Notice, 88 Fed. Reg. 2357 (Jan. 13, 2023) (extending the comment period from January 17, 2023 to January 31, 2023). The resurrected Notice of Intent had a public comment period running from November 18, 2022 through January 17, 2023, *see* 86 Fed. Reg. at 31782, but was later extended to January 31, 2023, 88 Fed. Reg. at 2357. In addition, WDOT sent out a newsletter in the fall of 2023 asking for additional comments on potential impacts and requesting comments be provided by November 30, 2023. (ECF No. 43-1 at 3.) On March 8, 2024, the agency approved a Final Supplemental Environmental Impact Statement and Record of Decision (the 2024 supplemental EIS), which form the basis for the current expansion plans. Notice of Final Federal Agency Actions on Proposed Highway in Wis., 89 Fed. Reg. 20533 (Mar. 22, 2024).

## LEGAL STANDARD

In reviewing an agency's decision, the APA instructs courts to "review the whole record or those parts of it cited by a party." 5 U.S.C. §706; *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (judicial review must be "based on the full administrative record" before the agency), *abrogated on other grounds, Califano v. Sanders*, 430 U.S. 99, 104–05 (1977). "The complete administrative record consists of all documents and materials directly or indirectly considered by the agency." *Miami Nation of Indians of Ind. v. Babbitt*, 979 F. Supp. 771, 775 (N.D. Ind. 1996) (quoting *Bar Mk Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993)). The whole record means "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

The agency is responsible for compiling the administrative record, and there is a strong presumption that the administrative record as furnished by the agency is complete. *Univ. of Colo.*

*Health at Mem'l Hosp. v. Burwell*, 151 F.Supp.3d 1, 12–13 (D.D.C. 2015). Accordingly, in preparing the administrative record, an agency should "collect those materials 'that were compiled by the agency that were before the agency at the time the decision was made'" and ensure that the record "contains 'neither more nor less' information than was before the agency." *Fund for Animals v. Williams*, 391 F.Supp.2d 191, 196 (D.D.C. 2005) (citations omitted).

An agency's determination of the contents of the record is subject to judicial review. *See Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444–45 (9th Cir. 2024). To overcome the presumption that the record produced by the agency is complete, Plaintiffs must identify "reasonable, non-speculative grounds for their belief that the documents" they seek to add to the administrative record "were considered by the agency and not included in the record." *Burwell*, 151 F.Supp.3d at 13 (deemphasized) (internal citations omitted).

## ANALYSIS

Plaintiffs argue the administrative record that Defendants have produced is incomplete. (ECF Nos. 38 & 39.) They ask the Court to order Defendants to include two additional sets of documents, along with a log that identifies any materials excluded from the record and explains the reason for their exclusion. For the reasons stated below, Plaintiffs' motion will be granted in part and denied in part.

### I. Because the Record Suggests that Defendants at Least Indirectly Considered Plaintiffs' Submitted Materials, These Documents Must Be Added to the Record.

Plaintiffs first ask the Court to order Defendants to supplement the record with a number of newspaper and journal articles concerning potential negative impacts of highway construction. (ECF No. 39 at 6–7; ECF No. 40 ¶3; ECF Nos. 40-1–5.) Plaintiffs explain that they emailed these materials to the WDOT in August and September of 2023. (ECF No. 39 at 6–7.) WDOT responded with an email indicating that the materials would be forwarded to the team working on the project, presumably for their consideration. (ECF No. 52.)

Defendants argue that these materials are not part of the record that was considered by the agency because they were not timely submitted during the open comment period. (ECF No. 41 at 7.) Defendants highlight that the comment period was open from November 18, 2022 through January 31, 2023 and again opened in November 2023. (*See id.* at 9.) Because these materials were not submitted during either timeframe, but were instead forwarded in May, August and September 2023, Defendants contend they are not properly part of the administrative record. (*Id.*;

*see also* ECF No. 40 ¶3.) Defendants further note that the materials are all dated prior to the open and close of the November 2023 comment period and thus Plaintiffs could have submitted them within that comment period. (ECF No. 41 at 9.) Finally, Defendants complain that even when the materials were submitted, Plaintiffs failed to tie them to any request for comment by the agency and without any effort to explain their relevance. (*Id.*)

Given the emails exchanged between the parties at the time, the Court agrees that Plaintiffs have overcome the "strong presumption" that Defendants properly excluded these materials from the record. The Plaintiffs correctly point out that they did not submit these documents during the initial comment period because they were not yet available at that point. And while the documents were submitted after the first comment period and before the second, Plaintiffs adequately explain that they were unaware that a second comment period would open at the time of submission. Nor did Defendants ever suggest that Plaintiffs needed to resubmit these materials when the second comment period reopened. In fact, WDOT led Plaintiffs to believe that resubmission would not be necessary when its representative replied to Plaintiffs indicating the submissions would be sent to the planning team. This indicates that the submissions were considered by the agencies and are thus part of the record.

Plaintiffs also ask that the record be supplemented with an administrative complaint that Plaintiffs filed on May 4, 2023 with FHWA's Office for Civil Rights, raising Title VI claims related to the planned construction. (ECF No. 39 at 7; ECF No. 40 ¶3; ECF Nos. 40-6–7.) Defendants respond that the process for Title VI and NEPA are separate. (ECF No. 41 at 9 n.4; ECF No. 52.) They therefore insist that the complaint would have been handled by a separate part of the agency and that the decision makers handling NEPA would not consider the Title VI complaint at all. (ECF No. 52.) At the telephonic hearing, Plaintiffs expressed skepticism at that assertion but admitted that their belief of inter-communications about the Title VI complaint was based on speculation. (*Id.*) The Court will deny the request to enter the Title VI complaint into the record, because Plaintiffs concede that their belief of inter-communications is speculation, thus defeating their claim. *See Burwell*, 151 F.Supp.3d at 13.

**II.    Defendants Must Add the Materials Considered for the 2016 EIS to the Record but Need Not Produce a Privilege Log.**

Finally, Plaintiffs ask the Court to order Defendants to supplement the record with additional unidentified materials that Defendants elected not to include in the record on relevance

or privilege grounds. Plaintiffs divide this request into two categories: (1) documents relating to the original 2016 EIS; and (2) a privilege log for documents excluded under the deliberative process privilege. (ECF No. 39 at 8–9; ECF No. 52.) The Court addresses each request in turn.

Plaintiffs explain that Defendants appear not to have included in the record all documents considered by the agencies in connection with the original EIS for this project, issued in 2016. (ECF No. 39 at 9.) Plaintiffs contend that, because the 2024 SEIS was by its terms a "supplement" of the original EIS for what is in essence the same project, the administrative record should include all documents considered in relation to the original 2016 EIS as well as those considered in connection with the 2024 supplemental EIS. (*Id.*; ECF No. 52.)

Defendants maintain that they produced the documents from the 2016 EIS process that were also considered in the 2024 supplemental EIS. (ECF No. 41 at 14; ECF No. 52.) They maintain that the 2024 supplemental EIS is a separate environment impact statement, and they therefore do not need to include all documents considered when creating the 2016 EIS. (ECF No. 52.) Defendants rely upon *Blue Mountain Biodiversity Project*, pointing out that there, the Ninth Circuit determined that the agency did not need to produce documents from a former environmental impact statement after a new environmental impact statement was issued. (*Id.* (citing 99 F.4th at 445–46).)

In reply, Plaintiffs point out that *Blue Mountain Biodiversity Project* involved a *new* statement, not a supplemental statement, thus distinguishing this case. (*Id.* (citing 99 F.4th at 443–44).) Plaintiffs also cite 40 C.F.R. §1502.9(d)(3), which provides that a supplemental impact statement is part of a larger environmental impact statement and cannot stand on its own. (*Id.*) The Court agrees that Defendants' decision to "supplement" the original 2016 EIS precludes them from excluding from the record matters that they considered in connection with the original 2016 EIS.

Regulation §1502.9(d)(1) states that agencies "shall prepare supplements to . . . final environmental impact statements if a major Federal action is incomplete or ongoing." Thus, supplements cannot stand alone but are instead part of another, final environmental impact statement. Here, the 2024 supplemental EIS is a supplement and must be considered in conjunction with the 2016 EIS. This makes the situation different than that presented in *Blue Mountain Biodiversity Project*, where only a new final environmental impact statement was at issue. *Cf.* 99 F.4th at 443–44, 445–46. Because Defendants supplemented the existing

environmental impact statement, instead of issuing a new final environmental impact statement, the 2016 EIS documents remain part of the administrative record and must be produced.

Plaintiffs also request a privilege log specifying what documents are being withheld under the deliberative process privilege. (ECF No. 39 at 10–12.) At the January 21, 2026 telephonic hearing, Plaintiffs clarified that they do not want the deliberative process information but seek any facts within those documents that are not privileged. (ECF No. 52.) Plaintiffs maintain that, without a privilege log, they have no way of knowing whether the claimed privilege is legitimate or if there are facts within the documents that are not subject to the deliberative process privilege. (*Id.*) Plaintiffs emphasize that many district courts have required privilege logs in similar circumstances. (ECF No. 39 at 10 (collecting cases).)

In response, Defendants maintain that they did not withhold any documents from the record pursuant to the deliberative process privilege, because no such documents were considered directly or indirectly by the agency. (ECF No. 41 at 10–11; ECF No. 52.)

The Court will deny Plaintiffs' request for a privilege log. On this issue, Plaintiffs have not rebutted the strong presumption that the agency record is complete or that Defendants' assertion is otherwise incorrect. *See Burwell*, 151 F.Supp.3d at 12–13. And while some district courts have ordered a privilege log in potentially similar circumstances, there is no statute or regulation requiring Defendants to do so, and the Court is reticent to legislate such a requirement where Congress has not done so.

Accordingly, as to Plaintiffs' second request, the Court will order Defendants to produce all documents considered when preparing the 2016 EIS. The Court will, however, deny Plaintiffs' request for a privilege log.

## CONCLUSION

Plaintiffs' motion to supplement will be granted in part and denied in part. Within 14 days of this order, the parties must meet-and-confer and propose a schedule for the supplementation of the record and for merits briefing.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Supplement the Record, ECF No. 38, is **GRANTED in part** and **DENIED in part**. Defendants must add the following documents to the record:

1. Articles entitled "Urban Highways Cost Billions in Lost Home Value" and "Divided by Design," sent by Plaintiffs' Counsel to WDOT on August 16, 2023.
2. Articles entitled "How would widening Milwaukee's I-94 affect residents near the highway?," "Milwaukee residents fear more flooding," and "Flex Your Grants," sent by Plaintiffs' Counsel to WDOT on August 22, 2023.
3. Yale News article and study "Health burden of air pollution differs across racial groups," sent by Plaintiffs' Counsel to WDOT on September 5, 2023.
4. Milwaukee Journal-Sentinel article entitled "Study cites increased flood risk in region," sent by Plaintiffs' Counsel to WDOT on September 6, 2023.
5. Yale School of Engineering article "Road Hazard: Evidence Mounts on Toxic Pollution from Tires" sent by Plaintiffs' Counsel to WDOT on September 25, 2023.
6. All documents and materials directly or indirectly considered by the agency when producing the 2016 Final Environmental Impact Statement.

**IT IS FURTHER ORDERED** that, on or before **February 12, 2026**, the parties must meet-and-confer, then submit a joint status report proposing a schedule for the supplementation of the record and for merits briefing.

SO ORDERED on January 28, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge